IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ROBERTO ROCA BUIGAS, et al.,**  *Plaintiffs,*  v.  **LM WASTE SERVICES CORP., et al.,**  *Defendants.* | **CIVIL NO. 19-1044 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Defendants, LM Waste Services, Corp. and Francisco Rivera Fernández' *Motion to Dismiss for Lack of Subject Matter Jurisdiction*. *See* Docket No. 77. Plaintiffs duly filed an *Opposition* thereto. *See* Docket No. 84. A *Reply* and *Surreply* ensued shortly thereafter. *See* Docket Nos. 89 and 92.

For the reasons stated herein, the Court **DENIES** Defendants' *Motion to Dismiss for Lack of Subject Matter Jurisdiction*. *See* Docket No. 77.

**I.       FACTUAL AND PROCEDURAL BACKGROUND**

On January 16, 2019, Roberto Roca Buigas, Katya Molero Rabassa, and the Conjugal Partnership formed between them (hereinafter, "Plaintiffs") filed a *Complaint* against the Defendants for an alleged breach of contract. Essentially, Plaintiffs seek specific performance under Article 1044 of the Puerto Rico Civil Code. P.R. Laws Ann, tit. 31, § 2294; redress of damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31 § 5141; and

collection of monies under Article 1111 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 3161. *See* Docket No. 1.

According to Plaintiffs, "[t]he jurisdiction of this Honorable Court to entertain this matter stems from 28 U.S.C. § 1332(a)(1), in view of the fact that Plaintiffs, are all residents of, and maintain domicile in, the State of Florida, and all Defendants maintain residence and domicile in Puerto Rico." Docket No. 1 at 2. It is further alleged that the amount in controversy exceeds the threshold amount of $75,000.00, exclusive of interest and costs as required by statute. *See* 28 U.S.C. § 1332(a)(1).

Having the benefit of the parties' arguments, the Court is ready to rule upon this matter. However, a careful scrutiny of the underlying legal framework is required in order to rule upon the pending motion.

## II.     APPLICABLE LAW

Federal courts are courts of limited jurisdiction. This Court has the responsibility "to police the border of federal jurisdiction". *Spielman v. Genzyme Corp*., 251 F3d 1 (1st Cir., 2001). The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." *Del Rosario Ortega v. Star Kist Foods*, 213 F.Supp. 2d 84, 88 (D.P.R., 2002) citing *Conventry Sewage Association v. Dworking Realty Co.*, 71 F.3d 1,3 (1st Cir., 1995). Just as a federal court cannot expand its jurisdictional horizon, parties cannot challenge subject matter jurisdiction on a federal court "by indolence, oversight, acquiescence, or consent." *U.S. v. Horn, 29 F.3d 754, 768 (1st Cir. 1994)*.  Therefore, a party that seeks the jurisdiction of the federal courts, has the burden of demonstrating its existence. Herein, the

issue is whether Plaintiffs were diversely domiciled from the Defendants at the time of filing the complaint. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 361 (1st Cir. 2001).

As courts of limited jurisdiction, federal courts have the duty of construing jurisdiction-granting statutes strictly. *See, e.g.*, *Alicea-Rivera v. SIMED*, 12 F. Supp. 2d 243,245 (D.P.R. 1998). In the instant case, Plaintiff has invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants as of the time of the filing of the complaint. *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir. 1994); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2L.Ed. 435 (1806). Since Co-Defendants have challenged Plaintiff's jurisdictional allegations, Plaintiff bears the burden of proving, by a preponderance of the evidence, the facts of their domicile and how the facts corelate with their jurisdictional claim. *Thomson v. Gaskil*, 315 U.S. 442 (1942); *Bank One v. Montle*, 964 F 2d 48, 50 (1st Cir. 1992*); Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F. Supp. 2d 11, 17 (D.P. R. 2000).[1]

For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 361 (1st Cir. 2001); *Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F.Supp.2d at 16.

---

[1] The Court has discretion as to the manner in which preliminary questions of jurisdiction are to be resolved and enjoys broad authority "to order discovery, consider extrinsic evidence, hold evidentiary hearings and make findings of fact in order to determine its own jurisdiction. *Valentín v. Hospital Bella Vista*, 254 F 3d at 363.

For purposes of diversity jurisdiction, a person's domicile is equivalent to his citizenship. *Williamson v. Osenton*, 232 U.S. 619, 625 (1994); *Valentín v. Hospital Bella Vista*, 254 F.3d at 366. A person is a citizen of the state in which he or she is domiciled. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. *Valentín v. Hospital Bella Vista*, 254 F.3d at 366. A person's domicile is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Rodríguez-Díaz v. Sierra-Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988) (internal citations omitted). Thus, Plaintiffs must have had "to remain there", i.e. the state of domicile, and if absent he or she must have had the intention of returning.

An individual can only have one domicile at a time. *Valentín v. Hospital Bella Vista*, 254 F.3d at 367. However, a change of one's legal domicile can occur instantly. *Morris v. Gilmer*, 129 U.S. 315 (1889). All that is required is:

> First, residence in a new domicile; and second, the intention to remain there. There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently. A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile.
>
> To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least. There is no minimum period of residency required. . . It has long been the rule that motive for the change in residence is irrelevant in determining domicile.

*Hawes v. Club Equestre El Comandante*, 598 F2.d 698, 701 (internal citations omitted).

In determining the Plaintiff's domicile, the Court must focus on that party's intent and must consider the totality of the evidence. The place of residence is *prima facie* evidence of

a party's domicile. *See Macone v. Nelson*, 274 F. Supp. 2d 136, 140 (D.P.R. 2003). However, the Court must also consider all factors which are relevant to a domicile determination, amongst others the most common are: (1) the place where civil and political rights are exercised; (2) where taxes are paid; (3) where the person has his real and personal property located; (4) drivers and other licenses obtained; (5) where bank accounts are maintained; (6) the location of club and church membership; and (7) places of business and employment. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F 2d at 10. No single factor is wholly determinative. *Rivera v. Hosp. Interamericano de Medicina Avanzada*, 125 F. Supp. 2d at 18. However, <u>the First Circuit considers registration to vote a "weighty" factor in ascertaining domicile</u>. *Id*. at 18. (Emphasis ours). The court is not bound to the four corners of the pleadings and responses when determining whether there is subject matter jurisdiction and is able to consider affidavits and depositions. *See Wright & Miller, Federal Practice and Procedure: Civil* § 1363 (1990).

### III. LEGAL ANALYSIS

In the instant case, the Defendants filed a *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Docket No. 77). Therein, the Defendants are essentially challenging both the sufficiency and accuracy of Plaintiffs' evidence that the Court in fact has jurisdiction to entertain the instant suit by way of diversity. According to the Defendants, an analysis of the substantive nature of Plaintiff, Roberto Roca Buigas' contacts in Florida and Puerto Rico indisputably shows that his domicile remains in Puerto Rico. The Court, however, after thoroughly reviewing the parties' motions, finds that although a close matter, the

Defendants' challenge of Mr. Roberto Roca Buigas' diversity jurisdiction is unpersuasive. The Court explains.

The Defendants argue that when the complaint was filed Mr. Roca-Buigas' driver's license and voter's registration were from Puerto Rico. It was not until seven (7) months thereafter that Mr. Roca-Buigas obtained a license from the State of Florida. *See* Docket No. 77-1 at 84 and 86, respectively. The Defendants further support its request for dismissal by arguing that Mr. Roca-Buigas first stated that he had a voter registration card from the State of Florida, and then denied so under oath in his deposition. *See Id.* at 92-93.[2] Notably, the Defendants include as part of their exhibits, Mr. Roca-Buigas' voter registration information where in fact it is confirmed that on August 26, 2019, seven (7) months after the filing of the complaint, Mr. Roca-Buigas registered as a voter before the Orange County Supervisor of Elections. *See Id.* at 86.

On another note, the Defendant argues that Mr. Roca-Buigas is the "apoderado[3]" of the basketball team "Piratas de Quebradillas" in the Puerto Rico Professional Basketball League (hereinafter, "BSN" for its Spanish acronym) "and because of his responsibilities and obligations as an 'apoderado' of the team and resident agent of multiple corporations he

---

[2] Q. And what is the date of issuance of your voter registration card in Florida?
MR. DEFENDINI [Mr. Roca's counsel]: The voter's ID?
MR. MENDOZA [Defendant's counsel]: Yes.
DEPONENT: A. Registration card? I don't have a voter's registration card.
[3] "[A]gent, representative.
(Law) proxy, attorney
(Music, Sport) manager." *Collins Dictionary*, January 14, 2021, 12:35 p.m., https://www.collinsdictionary.com/dictionary/spanish-english/apoderado.

spends time working on a daily basis in Puerto Rico" which also makes him a citizen of Puerto Rico and not of the State of Florida. Docket No. 77 at 18. Furthermore, Mr. Roca-Buigas appears as Resident Agent of several corporations in Puerto Rico, thus, the Defendant argues, that "having his principal place of work in Puerto Rico, Roca conducts businesses in Puerto Rico with his many other corporations and in those activities he is identified as being a resident of San Juan, Puerto Rico.

Additionally, the Defendant submits two closing transactions dated May 2nd, 2018 related to corporation named McLeary 51, Inc. (Docket No. 77 at 1-12) wherein Mr. Roca-Buigas appeared before Notary Public, Carolina V. Cabrera Bou as "of legal age, married, businessman, and resident of San Juan, Puerto Rico, whose faculty to appear in this act in representation of MC LEARY 51, INC., is evidenced by a Certificate of Corporate Resolution, which was sworn and subscribed by Roberto Roca Buigas, secretary of MC LEARY 51, INC., on May two (2), two thousand and eighteen (2018)." The Court notes that although in the *Deed of Sale* regarding the McLeary 51, Inc. corporation Mr. Roca-Buigas declared under oath that his place of residence was San Juan, Puerto Rico, the instant suit was not filed until January 16, 2019. For diversity purposes, Plaintiff's domicile is determined at the time of filing the complaint. *Murphy*, 45 F.3d at 522.

In turn, Mr. Roca-Buigas alleges that upon concluding the jurisdictional discovery they were able to evidence that he moved to Windermere, Florida prior to the filing of the *Complaint* "with the intent to remain there indefinitely." Docket No. 84 at 4. In support of his allegation, he submits the following evidence: Form 1040 U.S. Individual Income Tax Return

7

for the year 2018 under the names of Roberto Roca-Buigas and Katya B. Molero-Rabassa (Docket No. 84, Exhibit 4); Mr. Roca's voter information and driver's license from the State of Florida, issued both on August 26, 2019, seven (7) months after the filing of the *Complaint* (*Id.* at Exhibit 7 and 8, respectively); a handyman receipt dated November 8, 2017 related to home improvement services in his Florida property (Docket No. 19-2 at 20); two (2) plumbing service receipts dated September 18, 2018 and November 2, 2018 under the name of Mr. Roca-Buigas from his Florida property (Docket No. 19-2 at 39 and 40, respectively); receipts sent to Mr. Roca's e-mail related to his kids enrollments to The First Academy, a private school located in Orlando, Florida, for the 2017-18 school year (Docket No. 19-3); a certification from the Windermere Preparatory School certifying that Natalia Roca, daughter of Plaintiffs, enrolled at the school for the school year 2018-19 (Docket No. 19-4 at 1-2); documents related to the sale of the two properties that Plaintiffs owned in Puerto Rico, to wit, a property located at Paseo La Fuente which was sold on or about August 19, 2018 (Docket No. 19-5) and a property located in Paseo Alto, which was sold on June 30, 2018 (Docket No. 19-1, ¶ 17); car insurance documents dated October 27, 2018 (Docket No. 19-6); a registration renewal document issued by Orange County Tax Collector related to the registration of the two (2) vehicles owned by Plaintiffs in the State of Florida due by October 28, 2018 and issued to Mr. Roca-Buigas (Docket No. 19-7); E-Pass (toll booth) invoices from June through August 2018 (Docket No. 19-8); Property Tax Invoice from the Orange County Tax Collector issued as to the 2018 year directed to Mr. Roca-Buigas and Mrs. Molero-Rabassa (Docket No. 19-11); Electronic Articles of Organization for Florida Limited Liability

Company as to CAG America, LLC, a corporation whose authorized representative and resident agent is Mr. Roca-Buigas, dated November 9, 2017 (Docket No. 19-12); and a checking account statement under the name of Mr. Roca-Buigas dated from November 24 to December 21, 2018 from Bank of America, a bank institution with no presence in Puerto Rico (Docket No. 19-14);

Mr. Roca-Buigas also submitted a *Statement Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746* in support of his relocation contention wherein he declared that he used to live in Puerto Rico with his wife and two (2) children until October 2017 when he moved to the State of Florida. *See* Docket No. 19-1 ¶ 3. According to Mr. Roca-Buigas, he and Mrs. Molero "had purchased a house in Windermere several years before, and in the aftermath of Hurricane María[4], [] decided to move permanently to it." *Id.* ¶ 4. Moreover, according to Mr. Roca-Buigas, "[their] intention upon moving was and still is to remain there for an indefinite period" . . . and they "have lived there uninterruptedly up to the present." *Id.* ¶ 5-6.

The Court notes that utilities, such as, cable/internet, electric, gas and water bills are all under the name of Mrs. Molero. Furthermore, although Mrs. Molero's Florida license and voter's registration were issued on July 19, 2017, Mr. Roca-Buigas' Florida license and voter's registration were issued on August 26, 2019. *See* Docket Nos. 19-9 and 94, Exhibits 6, 7 and 8. It should also be noted that although Mr. Roca-Buigas argues that his domicile is in the

---

[4] The Court takes judicial notice of the passing of Hurricane María through Puerto Rico in the early morning of September 20, 2017.

State of Florida since before the filing of the *Complaint*, he still appears as the Resident Agent of several active corporations in the Puerto Rico Corporation Registry, to wit:

> a) PRTS, Inc., (Registry #: 376226, June 30, 2016);
> b) Nagu Corp., (Registry #: 200942, December 1, 2010)
> c) Santurce 1863, Inc., (Registry #: 160821, March 15, 2006)
> d) McLeary 51, Inc., (Registry #: 171871, May 1, 2007)
> e) YFPR del Caribe, Inc., (Registry #: 200950, December 1, 2010)
> f) RR Technology Group, Inc., (Registry #: 158350, December 5, 2005)
> g) Inversiones Capitalinas LLC, (Registry #: 309644, February 28, 2012).

*See* Docket No. 96 at 13-79. The Puerto Rico General Corporations Act of 2013 provides that:

> (a) Every corporation shall maintain a registered agent in the Commonwealth, who may be:
> 1. The corporation itself.
> 2. An individual resident in the Commonwealth.
> 3. A juridical person duly organized under the laws of the Commonwealth of Puerto Rico, or juridical person authorized to do business in the Commonwealth, whose place of business must coincide, in each case, with the registered office of the corporation which shall regularly open during working hours to be served process and to conduct the duties germane to a registered agent.
>
> (b) Whenever the terms "registered agent" or "registered agent in charge of the registered office" or other terms with similar meanings which refer to the agent of a corporation required by law to be domiciled in the Commonwealth of Puerto Rico, are used in the certificate of incorporation or in any other corporate document or bylaw, such term shall be deemed to mean and refer to, unless stated to the contrary, the registered agent required by this section. It shall not be necessary for a corporate to amend its certificate of incorporation or any other document to comply with the requirements of this section.

P.R. Laws Ann. Tit. 14 § 3542. Despite the fact that Mr. Roca-Buigas appears as resident of the Commonwealth of Puerto Rico in each of the above referenced corporations, the date in which they were registered was prior to his eventual change of domicile to the State of Florida. However, Plaintiffs appear as federal taxpayers since the fiscal year 2018. *See* Docket

No. 84, Exhibit 4. Most critical, the First Circuit has consistently held that "[w]hile the location of a person's business is certainly probative of intent, 'courts tend to emphasize the location of one's domestic and social life over her business contacts.'" *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992).

Considering all factors which are relevant to a domicile determination, amongst others the most common are: (1) the place where civil and political rights are exercised; (2) where taxes are paid; (3) where the person has his real and personal property located; (4) drivers and other licenses obtained; (5) where bank accounts are maintained; (6) the location of club and church membership; and (7) places of business and employment. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F 2d at 10, the Court is forced to conclude that diversity jurisdiction has been established by Plaintiffs. The Court explains.

As to the first factor, Mr. Roca-Buigas did not have a voter's registration card until August 2019, notably, seven (7) months after the filing of the *Complaint*. Notwithstanding, it is important to note that Plaintiffs' children have been enrolled in schools located in the State of Florida since at least the 2017-18 school year. As to the second factor, Plaintiffs have been filing federal tax returns since at least the year 2018. Despite the fact that Mr. Roca-Buigas did not acquire a Florida driver's license until August 2019, Ms. Molero has a Florida license since July 2017, and accordingly, most of the utilities are under her name. It is not uncommon for one member of the marriage to take care of all the utilities. As to the real and personal property location, Mr. Roca-Buigas owns a property in the State of Florida that has been used as the family's principal residence by Ms. Molero since at least October 2017, and by Mr.

Roca-Buigas, since at least August 2018. Notably, Mr. Roca-Buigas has two (2) Bank of America accounts, one personal account and a commercial account related to CAG America, LLC, a limited liability corporation registered in the State of Florida in November 2017. Bank of America has no presence in Puerto Rico. Lastly, Mr. Roca-Buigas argues that he "manages, oversees, and operates his businesses from his home in Florida. After moving to Florida, Roca ceased the operation of various business entities in Puerto Rico. The only exceptions are PRTS, Inc. [Piratas de Quebradillas basketball team] and RR Technology Group, Inc., both of which are managed remotely." Docket No. 84 at 12.

Notably, the First Circuit has consistently held that "[o]nce challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence. The key point of inquiry is whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus." *García Perez v. Santaella*, 364 F.3d 348, 350–51 (1st Cir. 2004)(citations omitted). Therefore, considering the totality of the evidence presented, the Court concludes that Mr. Roca-Buigas proved by a preponderance of the evidence that his domicile was in the State of Florida since at least August 2018, namely, six (6) months prior to filing the *Complaint*. The fact that the utilities are under the name of Mrs. Molero does not, by itself, prove otherwise. The Court finds that the evidence proves that Mrs. Molero moved to the State of Florida in November 2017, whereas, Mr. Roca-Buigas stayed in Puerto Rico until he sold the properties he had in Puerto Rico, one in June 2018 and the other on August 2018 at the latest. Thereafter, he joined his family in the State of Florida. Therefore,

the diversity jurisdiction standard has been met by Plaintiffs by preponderance of the evidence.

### A. Judicial Estoppel

On a separate note, the Defendants argue that "plaintiff Roberto Roca Buigas, is prevented by the doctrine of judicial estoppel from basing federal subject-matter jurisdiction (diversity of citizenship) on facts that he directly contradicts in prior sworn testimony." Docket No. 77 at 2.

The contours of judicial estoppel are analyzed herein. But even though its elements cannot be reduced to a scientifically precise formula, *New Hampshire v. Maine,* 532 U.S.742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), courts generally require the presence of three things before introducing the doctrine into a particular case. First, a party's earlier and later positions must be clearly inconsistent. *Id.; Alt. Sys. Concepts v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir. 2004). Second, the party must have succeeded in persuading a court to accept the earlier position. *New Hampshire,* 532 U.S. at 750, 121 S.Ct. 1808; *Alt. Sys. Concepts,* 374 F.3d at 33. Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court. *New Hampshire,* 532 U.S. at 751, 121 S.Ct. 1808; *Alt. Sys. Concepts,* 374 F.3d at 33.

The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation. *See Gens v. Resolution Trust Corp.,* 112 F.3d 569, 572 (1st Cir.1997) . . . "Acceptance" in this context is a term of art. In order to satisfy this prerequisite, a party need not show that the earlier representation led to

a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition However, . . . [t]he showing of judicial acceptance must be a strong one . . . [J]udicial estoppel is not meant to be a trap for the unwary and should be employed sparingly when "there is no evidence of intent to manipulate or misled the courts." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 365 (3d Cir.1996). (Emphasis ours).

Notably, "when a district court has diversity jurisdiction, it normally has the obligation to exercise that jurisdiction." *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 32 (1st Cir. 2018). It is further added by the First Circuit that, "[j]udicial estoppel is not to be applied by a court as a matter of course but, rather, is to be applied at the court's discretion. This discretion is not boundless. Judicial estoppel must be 'applied with caution to avoid impinging on the truth-seeking function of the court.'" *Id.* (citations omitted).

The judicial estoppel doctrine as described *in Patriot Cinemas, Inc. v. Gen. Cinema Corp.*, 834 F.2d 208 (1st Cir. 1987) was first recognized by the Supreme Court in the case of *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558 (1895) wherein the court declared:

> [I]t may be laid down as a general proposition in a legal proceeding, that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interest have changed, assume a contrary position, specially if it be to the prejudice of the party who has acquiesced in the position taken by him.

The above cited doctrine has been recognized, and applied by the First Circuit of Appeals in *Patriot Cinemas, supra,* at 211–213; *Hurd v. DiMento & Sullivan*, 440 F.2d 1322

(1st Cir. 1971), cert. denied, 404 U.S. 862, 92 S.Ct. 164 (1971); *Smith v. Boston Elevated Railway Co.*, 184 F. 787 (1st Cir.1911). The doctrine is to be applied when a party is "playing fast and loose with the courts" and when "intentional self contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice". It is thus applied to avoid manifest injustice. *Patriot Cinemas*, 834 F.2d at 212, citing *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3rd Cir.1953); in accord *Allen v. Zurich Insurance Co.*, 667 F.2d 1162 (4th Cir.1982); *Jett v. Zink*, 474 F.2d 149 (5th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 153 (1973).

The Court begins by noting that the judicial estoppel remedy is discretionary in nature. Furthermore, pursuant to Section 302 of the Puerto Rico General Corporations Act of 2013, a resident agent for corporations needs to be a resident of Puerto Rico. *See* P.R. Laws Ann. Tit. 14 § 3542. It is important to note, that although **Mr. Roca-Buigas appears as resident of the Commonwealth of Puerto Rico in each of the corporations mentioned by the Defendants, to wit, a) PRTS, Inc., (Registry #: 376226); b) Nagu Corp., (Registry #: 200942); c) Santurce 1863, Inc., (Registry #: 160821); d) McLeary 51, Inc., (Registry #: 171871); e) YFPR del Caribe, Inc., (Registry #: 200950); f) RR Technology Group, Inc., (Registry #: 158350); and g) Inversiones Capitalinas LLC, (Registry #: 309644),** the date in which they were registered was prior to his eventual change of domicile to the State of Florida. *See supra*, at 10.  Most critical, the First Circuit has consistently held that "[w]hile the location of a person's business is certainly probative of intent, 'courts tend to emphasize the location of one's domestic and

social life over her business contacts.'" *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992).

The Court agrees that corporations have a fiduciary duty to promptly update the information in the Corporations Registry of Puerto Rico. It should also be noted that as a resident agent must be a resident of Puerto Rico pursuant to the General Corporations Act of Puerto Rico 2013, Mr. Roca-Buigas can no longer serve as Resident Agent of his Puerto Rico Corporations as he is no longer a Puerto Rico resident.

However, the Court deems that Mr. Roca-Buigas' registration issues are of a procedural nature, and beyond the scope of the Court's jurisdiction. Diversity jurisdiction is established primarily by "citizenship or domicile, not residence." *Bank*, 964 F.2d at 53. More importantly, the Defendants fail to submit a judicial or quasi-judicial proceeding wherein Mr. Roca-Buigas argues against the diversity jurisdiction in controversy or he prevails in doing so. Therefore, the Court stops here, as it finds the Defendants' judicial estoppel allegation is misplaced.

On a final note, the Defendants once again turn to Mr. Roca-Buigas' 19-year-old conviction of perjury in the Federal Court to sustain their allegations of untruthfulness as to subject matter jurisdiction. *See* Docket No. 89.[5] To that end, on May 21st, 2020, the Court was emphatic as to the fact that the admissibility or lack thereof of Mr. Roca-Buigas' criminal history will be determined "in its due course" before the trial. Docket No. 69 at 4. No such

---

[5] Mr. Roca-Buigas was sentenced to probation in case captioned *USA v. Negrón-Montalvo*, criminal number 00-660 (SEC) before Honorable Judge Salvador E. Casellas as to the Indictment filed on August 8. 2000.

determination has been made. Hence, the Court will disregard, at this time, all arguments related to Mr. Roca-Buigas' criminal history as evidence of his character.

## IV.     CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** the Defendants' *Motion to Dismiss for Lack of Subject Matter Jurisdiction*. *See* Docket No. 77. Therefore, the instant proceedings are to continue in their usual course.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of February, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge