IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ROBERTO ROCA BUIGAS, et al.,** *Plaintiffs,* v. **LM WASTE SERVICES CORP., et al.,** *Defendants.* | **CIVIL NO. 19-1044 (DRD)** |

**OPINION AND ORDER**

Pending before the Court is Plaintiffs, Roberto Roca Buigas, Katya Molero Rabassa and their conjugal partnership's (hereinafter, collectively "Plaintiffs") *Motion for Writ of Prejudgment Attachment or Garnishment*. *See* Docket No. 93. Plaintiffs moved for attachment or garnishment to obtain payments of amounts allegedly due, based on their belief that they had entered into a private settlement agreement ("PSA") with the Defendants where "the parties agreed that LM Waste owed [Roca Buigas] the principal amount of $1,470,000.00, plus a negotiated interest amount of $325,000.00." *Id.* at 3. Plaintiffs' belief stems from the terms created in a "hand-written yellow legal-pad paper at the time of the court-scheduled conference" that was signed by both parties. *Id.* Based on this agreement, the Parties moved for voluntary dismissal of the claims and the Court accepted the Parties' request. *Id.* at 4.

Codefendant, Francisco J. Rivera-Fernández (hereinafter, "Rivera-Fernández") filed a *Response in Opposition* thereto. *See* Docket No. 109. He essentially argues that the "requirements to issue a writ of prejudgment attachment or garnishment of property or funds . . . are not present in this case." *Id.* at 2. He further argues that "there is no valid agreement or

contract of any kind between the parties" and as such, "the writ of prejudgment attachment or garnishment of property or funds . . . must be denied." *Id.* at 9.

The attachment procedure is governed by the Puerto Rico Rules of Civil Procedure which provide that, "[n]o provisional remedy shall be granted, modified, set aside, nor shall any action be taken thereon without notice upon the adverse party and a hearing, except as provided in Rules 56.4 [attachment or prohibition to alienate] and 56.5 [order to do or to desist from doing]. P.R. Laws Ann. T. 32 Ap. V, § 56.2; *see Rivera Rodriguez & Co. v. Stowell Taylor*, 133 P.R. Dec. 881 (1993). Therefore, a hearing ensued. During the prejudgment attachment hearing, the Court heard the parties' arguments as well as the testimony of Plaintiff, Roca-Buigas. Codefendant, LM Waste Services, Corp. (hereinafter, "LM Waste") announced that it would not object to Plaintiffs' pre-attachment request. Rivera-Fernández, instead, argued that he is a guarantor of the *Private Settlement Agreement* and not a joint and several debtor, as Plaintiffs suggest. On the contrary, Plaintiffs argued that Rivera-Fernández's assets must be taken into account as not only is he a joint and several debtor but LM Waste's accounts receivable have been compromised through a *Collateral Assignment and Security Agreement*. *See* Joint Exhibit No. 24 of the Prejudgment Attachment Hearing.

As a result thereof, the parties were ordered to file supplemental briefs as to whether Rivera-Fernández's assets should be used when authorizing the writ of attachment and the amount of bond the Court should impose as part of the attachment process. *See* Docket Nos. 93-1 and 97-1. Rivera-Fernández essentially reiterated that he is a guarantor of the *Private Settlement Agreement* and as such, not a joint and several debtor. In fact, a guarantor benefits from the exhaustion of remedies ("excusión de bienes") as it was timely raised during the hearing.

It is further argued that due to the fact that LM Waste has assets by way of account receivables amounting to $9,453,695.25, "Mr. Rivera has discharged his duties as a guarantor claiming the right of excusion of assets by pointing to creditor as to debtor's assets sufficient to cover the debt claimed." *See* Docket No. 152, ¶¶ 18, 19; *see also* Joint Exhibit 17 of the Prejudgment Attachment Hearing.

In turn, Plaintiffs claim that "Rivera waived the allegation that Art. 1729 of the Puerto Rico Civil Code of 1930 applies. Rivera did not include that argument in his Answer to Complaint . . . nor in his Opposition to Plaintiffs' Request for Writ of Prejudgment Attachment or Garnishment," and, "Plaintiffs showed in a motion filed on August 31, 2021, that Rivera and LM Waste are jointly and severally liable to Roca." Docket No. 151, ¶ 4. Therefore, "[s]ince they are jointly and severally liable, Art. 1729 of the Puerto Rico Civil Code of 1930 is inapplicable and irrelevant to consider whether a prejudgment writ of attachment shall be issued against Rivera." *Id.* In the event that the Court concludes that Rivera-Fernández's defense is timely, LM Waste's "$9MM in account receivables . . . are not real assets sufficient to cover the debt." *Id.*, ¶ 16. In fact, Plaintiffs argue that "LM Waste has no real assets," as these are "uncertain assets which may never become liquid. If these assets were collectible, LM Waste would have done so instead of entering into the Security Agreement with Parliament." *Id.*, ¶ 18. Lastly, Plaintiffs claim that through a "Security Agreement executed on December 30, 2019, by LM Waste and Parliament [High Yield Fund, LLC] . . . LM Waste granted a collateral security interest in and assigned to Parliament all proceeds, revenues, income, profits, and monies now due and becoming due to LM Waste." Joint Exhibit No. 24 of the Prejudgment Attachment Hearing. Therefore, pursuant to the Security Agreement, "the debt is also guaranteed by the assignment to Parliament, of a continuing first

priority lien and security interest over 'all rights, title, and interest of LM Waste in and to all proceeds, revenues, income, profits and monies' now due and becoming due to LM Waste. *See id.* Therefore, Parliament holds a first priority lien over the account receivables amount.

## I. LEGAL STANDARD

Under Rule 64 of the Federal Rules of Civil Procedure, "at the commencement or throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a property to secure satisfaction of the potential judgment" and specifically lists "attachment" and "garnishment" as available remedies under this rule. *See* Fed. R. Civ. P. 64. In other words, "provisional remedies are only available under the circumstances and in the manner provided by the law of the state in which the federal court is located." *Buscaglia v. Vasarely*, No. 09-2196 (JAG), 2010 WL 2733703, at *3 (D.P.R. July 8, 2010). As such, Rule 56 of the Puerto Rico Code of Civil Procedure governs over the provisional remedies requested in this case, and allows a Plaintiff to "move, before or after judgment is entered, for the provisional attachment of a Defendant's property to 'secure satisfaction of the judgment.'" *Id.*

Rule 56 grants the Court "ample discretion in deciding whether to issue an order for provisional remedies." *Vera-Velez v. Diaz-Sanchez*, No. 06-2127 (SEC), 2009 WL 2929337, at *2 (D.P.R. Sept. 8, 2009). The Puerto Rico Supreme Court has construed this procedural rule expansively in ruling that the Court's "only limitation is that the measures [or provisional remedies] be reasonable and adequate to the essential purpose of the [case], which is to guarantee the effectiveness of the judgment." *HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 910, 914 (1988) (quoting *F.D. Rich Co. v. Superior Court*, 99 D.P.R. 155, 173

(1970)). Furthermore, "the applicable provisions must be interpreted broadly and liberally, granting the remedy that best ensures the claim and that least inconvenience causes the defendant." *Citibank v. ACBI*, 200 PRSC 724, 732 (2018). Nevertheless, the lawfulness of a prejudgment attachment or garnishment depends "on the validity of the plaintiff's claim against the defendant." *Garcia-Guzman v. Villoldo*, 273 F.3d 1, 6 (1st Cir. 2001). As such, under Puerto Rico law, "if the court determines that the plaintiff's claim against the defendant has no merit, it follows that [the plaintiff] has no right to the defendant's property, and that the attachment was unwarranted." *Id.* Thus, in determining if a prejudgment remedy is valid, the Court must consider whether the requested remedy is "(1) provisional; (2) has the objective of ensuring the effectiveness of the Court's future judgment; and (3) takes into account the interests of both parties, as required by substantial justice and the circumstances of the case." *Citibank,* 200 PRSC at 733.

## II.     LEGAL ANALYSIS

As diversity jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(1), Puerto Rico law applies. Article 1729 of the Puerto Rico Civil Code provides that "[b]y security a person binds himself to pay or perform for a third person [or corporation] in case the latter should fail to do so." P.R. Laws. Ann. Tit. 31 § 4871. There are several types of security, to wit, "conventional, legal, or judicial, gratuitous, or for a valuable consideration." *Id.*, § 4872. Specifically, Article 1733 provides that, "[a] creditor may cite the surety should he institute the claim against the principal debtor, but the benefit of a levy against the principal shall always be reserved, even when a judgment is rendered against both of them." *Id.*, § 4895. However, "[i]n order that the surety may avail himself of the benefit of a levy against the principal, he must require it of the creditor

5

as soon as the latter may sue for payment, and determine the property of the debtor which can be sold within the Commonwealth of Puerto Rico and which may be sufficient to cover the amount of the debt." *Id.*, § 4893. If the aforementioned conditions are met by the guarantor, "the creditor who is negligent in making a levy upon the property of the principal designated, shall be liable to the extent of the value of said property for the insolvency of the debtor arising from said negligence." *Id.*, § 4894. Finally, Article 1726 provides that,

> [s]ecurity is not presumed; it must be express and cannot be extended further than that specified therein. If it be simple and indefinite it shall include not only the principal obligation but all its accessories, including the costs of the suit, it being understood, with regard to the latter, that the surety shall only be liable for those incurred after he has been asked to pay.

*Id.*, § 4876.

Therefore, "the liability on a bond may not be construed in a liberal sense, in order to amplify it to include more than what is therein contained." *Heirs of José S. Belaval v. Ramírez*, 1944 PR Sup. LEXIS 42; *see also*, *Municipality of San Juan v. Stadium & Coliseum Operations*, 1982 PR Sup. LEXIS 231. After all, "obligations under a bond should not be presumed that is, they must be expressed." *Id.* Therefore, agreements are to be <u>strictly construed in favor of the guarantors</u>. *Lawrence Systems, Inc. v. Ramirez De Arellano*, 415 F. Supp. 54 (1976) (Emphasis ours). In fact, courts cannot enlarge the scope of an undertaking by a surety. *Pratts v. Dist. Court of Mayagüez*, 1946 PR Sup. LEXIS 96.

Rivera-Fernández claims that he has complied with the guarantor requirements according to Puerto Rico law, as he pointed to Plaintiffs as to the debtor's assets sufficient to cover the debt that has been claimed. *See* Docket No. 152, ¶ 19. Plaintiffs, instead, argue that LM Waste's assets are compromised, as "the debt is also guaranteed by the assignment to Parliament, of a

6

continuing first priority lien and security interest over 'all rights, title, and interest of LM Waste in and to all proceeds, revenues, income, profits and monies' now due and becoming due to LM Waste." Docket No. 151, ¶ 25. Therefore, Parliament holds a first priority lien over the account receivables amount. But, according to Rivera-Fernández, "the assignment is limited only to the judicial claims proceeds listed in Exhibit A of the Agreement and do not extend to any other assets." Docket No. 152, ¶ 21.

Upon review of the *Collateral Assignment and Security Agreement*, the Court concurs with the Defendant that the assignment specified therein did not include all of LM Waste's account receivables, but it is limited to certain judicial claims proceeds as specified in Exhibit A of said document. *See* Exhibit 24 of Prejudgment Attachment Hearing[1]. Therefore, LM Waste's assets as identified by Rivera-Fernández are sufficient to cover the debt that has been claimed by Plaintiffs.

Plaintiffs also claim that Rivera-Fernández is not a guarantor but a joint and several debtor of the alleged outstanding debt. However, the Defendant correctly relies on the "express and clear language of the . . . Private Settlement Agreement" in support of their contention that Rivera-Fernandez is the guarantor of the debt.  Also, a review of relevant allegations makes the Court reach the same conclusion, as Plaintiffs specifically allege that "Rivera personally guaranteed these amounts." Docket No. 1, ¶ 58 (emphasis ours). In further support thereof, the *Private Settlement Agreement* specifies the nature of Rivera-Fernández's role as a guarantor of

---

[1] "Whereas, the Assignee has required the payment of the Indebtedness evidenced by the Loan Agreement, the Note, and other ancillary loan documents (as modified from time to time, collectively, the "Loan Documents"), be also guaranteed by the assignment to the Assignee, of a continuing first priority Lien and security interest over all rights, title, and interest of the Assignor in and to all proceeds, revenues, income, profits, and monies now due and becoming due to the Assignor as the result of the total or partial settlement of, or any total or partial final judgment or verdict issued under, any of the judicial claims listed in **Exhibit A,** attached hereto and made to form a part hereof (hereinafter collectively referred to as the **"Claims'**, and all such proceeds, revenues, income, profits and monies, collectively, the **"Proceeds"**)." *Id.*, at 1.

the debt as the parties agreed therein that "the debt shall be paid by L & M Waste Services and Francisco J. Rivera Fernández will guarantee payment of the same for $1,470,000.00." Docket No. 97, Exhibit 1, ¶ 1.

The Court notes that although Plaintiffs have submitted several Promissory Notes as well as other documents which could be related to the procedural background of the parties' disputes, in reality, the *Complaint* is based solely as to the breach of the contract which was entered between the parties on December 5th, 2012. This is an action to enforce the *Private Settlement Agreement*, not other prior obligations between the parties. In the *Complaint,* Plaintiffs specifically describe the nature of the case as follows:

> 1. This is an action for Breach of Contract in which Plaintiffs seek specific performance of a private settlement agreement entered into between Mr. Roberto Roca Buigas, LM Waste Services Corp., and Francisco J. Rivera Fernández, on December 5, 2012.
>
> 2. This is also an action for collection of monies owed under the aforementioned agreement by Defendants LM Waste Services Corp. and Francisco J. Rivera Fernández to Plaintiffs in the amount of $1,771,513.29, plus interest.
>
> 3. Lastly, this is an action for damages suffered by Plaintiffs resulting from Defendants' failure to comply with the aforementioned agreement.

Docket No. 1, ¶¶ 1-3. According to Plaintiffs, the genesis of the *Private Settlement Agreement* is the following:

> 26. Thus, on October 7, 2011 Roca filed civil case number KAC 2011-1104, to collect on the monies owed to him at the time and under the new agreement against LM Waste, Rivera, and Mr. Isidro Baranda Alonso, who used to be President of LM Waste.
>
> 27. After various procedural events, including the filing of a counterclaim by Rivera against Roca, a court conference was scheduled for December 5, 2012.

> 28. On that date, as the parties waited outside the courtroom, Roca and Rivera came to a private settlement agreement ("Private Settlement Agreement") to settle all claims between them.
>
> 29. Essentially, Roca and Rivera agreed that LM Waste owed Roca the principal amount of $1,470,000.00, plus a negotiated interest amount of $352,000.00, and that Rivera personally guaranteed these amounts.

*Id.*, ¶¶ 26-29. Other relevant allegations include that "LM Waste and Rivera entered into a Private Settlement Agreement with Roca, in which LM Waste agreed that they owed Roca the amount of $1,470,000.00 plus a negotiated interest amount of $352,800.00." *Id.*, ¶ 57. Therefore, the Court will not consider prior obligations between the parties, but the *Private Settlement Agreement* as agreed upon and signed on December 5, 2012. After all, the Rivera-Fernández relied on said document in support of his contention that he is a guarantor.

Therefore, the Court finds that an attachment as to LM Waste's account receivables fulfills the purpose of securing satisfaction of a potential judgment in favor of Plaintiffs. The prejudgment attachment cannot extend to Rivera-Fernández at this time, as he is the guarantor of the contract not a joint and several liable debtor. The funds subject to the prejudgment attachment have been properly identified by the Defendant. All that is left is for the Court to determine whether a *pendente lite* bond is required from Plaintiffs in case of damages as a result of the prejudgment attachment.

As previously explained, Rule 64 of the Federal Rules of Civil Procedure provides in its pertinent part that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies. The remedies available include . . . attachment." Fed. R. Civ. P. 64. Accordingly,

in the absence of an applicable federal statute, the Court must rely on Puerto Rico law as to this matter. To that end, Rule 56.1 of the Puerto Rico Code of Civil Procedure provides that "the court may issue a provisional order to secure the effectiveness of the judgments." *M. Quilichini Sucrs., Inc. v. Villa Inv. Corp.,* 112 P.R. Dec. 322 (1982). Pursuant to Rule 56.3(3), if the remedy is sought after judgment no bond is required. However, "[i]n all other cases, a bond <u>will be required</u> to answer for all the damages arising from the remedy." *Id.* (Emphasis ours).

In fact, according to the Puerto Rico Supreme Court, "Rule 56 of the Rules of Civil Procedure confers upon the court sufficient flexibility to issue the measures which it deems necessary or convenient, according to the circumstances of the case, to secure the effectiveness of the judgments. Its only limitation is that the measure be reasonable and adequate to the essential purpose of the same, which is to guarantee the effectiveness of the judgment which in due time may be rendered." *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 914 (1st Cir. 1988) (quoting *F.D. Rich Co. v. Superior Court*, 99 P.R.R. 155, 173 (1970)). The main elements to determine the bond required for an attachment to secure judgment are:

> the usefulness of the property to be attached for the defendant; how solid are the grounds that prima facie support the plaintiff's claim; and if the security requested is the least onerous that may guarantee the effectiveness of the judgment which may be rendered. In doing this, courts should heed the provisions of Rule 56.3, which sets forth that an estimate should be made of the possible damages that would be caused to the defendant and they should also bear in mind the requirements of Rule 56.1, that the interests of all the parties shall be considered, as required by substantial justice.

*Soc. de Gananciales v. Rodriguez*, 116 P.R. Dec. 468 (1985) (quoting *Vda. de Galindo v. Cano*, 108 D.P.R. 277, 282 (1979).

In sum, in order to answer for all the damages arising from the remedy a bond must be imposed. However, the instant case revolves around a contract signed by the parties on

December 5, 2012, and which on its face includes all the elements required pursuant to Puerto Rico law to be considered a valid contract, namely, consent, object, and cause. *See* P.R. Laws Ann. Tit. 31, § 1213. Moreover, Rivera-Fernández relied on said document to prove that he is a guarantor of the debt as opposed to a joint and several debtor. Lastly, Plaintiffs' claims seem to be supported by uncontroverted evidence which make their chances at prevailing particularly high. Therefore, the Court will impose a prejudgment attachment bond of ten thousand dollars ($10,000.00) upon Plaintiffs.

### III.  CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' *Motion for Writ of Prejudgment Attachment or Garnishment* (Docket No. 93). Namely, the Court grants Plaintiffs' petition for Prejudgment Attachment as to LM Waste but denies Plaintiffs' request for Prejudgment Attachment as to Rivera-Fernández at this juncture. Plaintiffs are to comply with a bond of ten thousand dollars ($10,000.00) in order for the writ of attachment to be issued.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge