IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROBERTO ROCA BUIGAS, et al.,**

    *Plaintiffs,*

    v.

**LM WASTE SERVICES CORP., et al.,**

    *Defendants.*

**CIVIL NO. 19-1044 (DRD)**

**OPINION AND ORDER**

Pending before the Court is Plaintiffs' *Motion for Summary Judgment and Incorporated Memorandum of Law* (Docket No. 160)[1]. The Defendants filed a *Response in Opposition* thereto. See Docket No. 166[2]. A *Reply* ensued shortly thereafter. See Docket No. 183.

For the reasons stated herein, the Court **GRANTS** Plaintiffs' *Motion for Summary Judgment and Incorporated Memorandum of Law* (Docket No. 160). See Docket No. 160.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2019, Plaintiffs, Roberto Roca-Buigas, Katya Molero-Rabassa, and the Conjugal Partnership formed between them (hereinafter, "Roca-Buigas," "Molero-Rabassa, and collectively, "Plaintiffs") filed a *Complaint* against the Defendants, LM Waste Services, Corp.[3] (hereinafter, "LM Waste") and Francisco J. Rivera-Fernández (hereinafter, "Rivera-Fernández" and collectively, "Defendants") for an alleged breach of contract. Essentially, Plaintiffs seek

---

[1] A *Statement of Undisputed Facts in Support of Motion for Summary Judgment* was also filed. See Docket No. 161.
[2] A *Statement of Additional Facts* was filed by the Defendants. See Docket No. 168.
[3] LM Waste is a company dedicated to the collection and disposal of solid waste and to the management of waste landfills. Comp., ¶ 9.

specific performance under Article 1044 of the Puerto Rico Civil Code. P.R. Laws Ann, tit. 31, § 2294; redress for damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31 § 5141; and collection of monies under Article 1111 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 3161. See Docket No. 1.

The instant case stems from an alleged breach of contract in which Plaintiffs seek specific compliance with a Private Settlement Agreement entered between Roca-Buigas, LM Waste and Rivera-Fernández on December 5, 2012. Complaint, Docket No. 1, ¶ 1. Plaintiffs further request collection of monies owed under the aforementioned agreement by Defendants to Plaintiffs in the amount of $1,771,513.29, plus interest. Id., ¶ 2. Finally, Plaintiffs are seeking damages resulting from Defendants' alleged failure to comply with the agreement. Id., ¶ 3.

The *Complaint* stems from a *Professional Services Agreement* between LM Waste and Roca-Buigas which dates back to April 9, 2010. Id., ¶ 9. By virtue of the *Professional Services Agreement*, LM Waste retained the services of Roca-Buigas as an independent contractor to provide consulting services on waste management, administration, operation, and counseling in related areas of the company. Id., ¶ 10. In return, LM Waste agreed to pay Roca-Buigas the sum of $1,100,000.00 for his services, which would be paid over the course of five (5) years. Id., ¶ 12. Rivera-Fernández "personally guarantee[d] the obligations of the Company in th[e] Agreement." Docket No. 109, Exhibit No. 1 at p. 6. According to Roca-Buigas, although he complied with all his obligations under the Professional Services Agreement, LM Waste and Rivera-Fernández failed to do so. Id., ¶ 16. Despite several collection efforts, Roca-Buigas claims that the Defendants failed to comply with all the other payments. Comp., ¶ 18. Therefore, two separate complaints

were filed before the Puerto Rico Court of First Instance, San Juan Part civil numbers K AC 2011-0217 (508) and K AC2011-1104 (908).

After several procedural events, related to the second complaint, on December 5, 2012, the parties reached an agreement to settle all claims between them. Id., ¶ 28. Essentially, Roca-Buigas and Rivera-Fernández agreed that LM Waste owed Roca-Buigas the principal amount of $1,470,000.00, plus a negotiated interest amount of $352,000.00. Id., ¶ 29. Rivera-Fernández agreed to "guarantee that the payment of the same will be $1,470,000.00. Id., see also, Opinion and Order, Exhibits No. 1 & 1-A[4]. In exchange thereof, the parties would waive each other from all other claims, including claims Roca-Buigas' claims against Barandas-Alonso in his personal capacity. Id.

After the agreement was reached, the Defendants made three (3) payments. Comp., ¶¶ 37-38. No other payments were made by the Defendants thereafter. Id., ¶ 39. As such, on March 20, 2013, Roca-Buigas filed a motion seeking the execution of judgment in civil case number K AC2011-1104. Id., ¶ 40. The court denied the request premised on the fact that the agreement's terms and conditions were not made part of the Judgment, due to its private nature. Therefore, an independent action had to be filed. Id., ¶ 42.

Considering that no other payments were made by LM Waste and Rivera-Fernández after August 14, 2013, Plaintiffs argue that the complete amount of $1,470,000.00, plus the balance of the negotiated interest in the amount of $301,513.29 is due and payable. Therefore, according to Plaintiffs, LM Waste and Rivera-Fernández have an outstanding debt with Roca-Buigas of $1,771,513.29.

---

[4] Exhibit No. 1-A is the English translation of the yellow-pad paper.

Plaintiffs are now requesting summary judgment granting their claims against the Defendants. Roca-Buigas claims that "[s]ummary judgment should be issued as 'there is no genuine dispute as to any material fact' that prevents this Court from entering Summary Judgment in favor of Plaintiffs and against LM Waste and Rivera who are jointly and severally liable to Roca for all amounts due under the PSA. Fed. R. Civ. P. 56(a). Motion for Summary Judgment ("MSJ"), Docket No. 160 at p. 3. Essentially, Plaintiffs argue that,

> [t]he essential terms of the PSA [private settlement agreement] were hand-written on a yellow legal-pad sheet of paper and signed by Rivera, Roca and by Isidro Barandas's counsel José Luis Barrios Ramos. In the PSA, the parties agreed that LM Waste owed Roca the principal amount of $1,470,000.00. Roca and Rivera also agreed that Rivera would guarantee Roca the full amount owed of $1,470,000.00. Roca and Rivera further agreed that LM Waste would also pay 48 monthly installments of $7,350.00 each, to exclusively cover the interest calculated at a rate of 6% payable on the 5th day of each month, starting on January 5, 2013[,] and ending on January 5, 2017. When added, the total amount owed to Roca for the principal amount ($1,470,000.00) and negotiated interest ($352,800.00) comes to $1,822,800.00.

MSJ at p. 16. Additionally, Roca-Buigas claims that "the Defendants admitted to the State Court that the parties had reached a private settlement agreement, not that they had reached a 'preliminary agreement' and the State Court accordingly, "recognized that the parties 'had reached a private settlement agreement' not a 'preliminary' one." Id. at p. 2. Simply stated, Plaintiffs claim that the essential terms of the agreement were written on a yellow legal-pad sheet of paper and signed by all parties. Hence, said document is the operative settlement agreement, which is now due and payable.

In turn, Defendants argue that "on December 5, 2012, Mr. Roca-Buigas and co-defendants Mr. Isidro Barandas-Alonso, on his personal behalf and as the representa[tive] of LM Waste, and Mr. Rivera Fernández as a guarantor of LM Waste drafted and signed a preliminary agreement in

a handwritten piece of paper." <u>Opposition</u>, Docket No. 166 at p. 4. Essentially, "[t]he signed handwritten piece of paper consisted only as a preliminary agreement to be used as a guide by the parties to draft and prepare the final 'Confidential Settlement Agreement and General Release' that all the parties involved in the Complaint were still negotiating and would eventually sign in order to settle once and for good all the claims between them [arising] from the 'Professional Services Agreement.'" <u>Id.</u> Therefore, there are controversies as to material facts that impede summary judgment. <u>See</u> <u>id.</u>

Having the benefit of the parties' arguments, the Court is ready to rule upon this matter. However, a careful scrutiny of the underlying legal framework is required in order to rule upon the pending motion.

## II.     FACTUAL FINDINGS

The following factual findings are taken from the parties statements of undisputed facts, and supported documentation. Upon careful review of the record, the Court finds the following facts are undisputed:

1.      Roca-Buigas is of legal age, married to Katya Molero-Rabassa, businessman, and resident of the State of Florida. <u>See</u> Docket No. 19, Exhibit No. 1.

2.      LM Waste was a corporation organized under the laws of the Commonwealth of Puerto Rico. Its physical address is listed as 243 PR-2, Villa Caparra, Guaynabo, Puerto Rico 0096, and its postal address as PO Box 11852, San Juan, Puerto Rico 00922-1852. <u>See</u> <u>Comp.</u>, ¶ 7; <u>Rivera-Fernández's Answer to Complaint</u>, Docket No. 104, ¶ 7.

3.      Francisco J. Rivera Fernández is of legal age, a businessman, with residence and domicile in Puerto Rico. <u>See</u> <u>Comp.</u>, ¶ 8; <u>LM Waste's Answer to Complaint</u> Docket No. 103, ¶ 8.

4.      On April 9, 2010, Roca-Buigas, Molero-Rabassa, Vivian Roca-Buigas, Vivian Buigas de la Cruz, Reynaldo González-Irizarry, and Ivette Ortiz-Morales as shareholders of LM Waste and Rivera-Fernández executed a *Stock Purchase Agreement* wherein Rivera-Fernández acquired 100% of shares of LM Waste. See Pre-Attachment Hearing, Exhibit No. 24[5].

5.      On April 9, 2010, LM Waste, a company dedicated to the collection and disposal of solid waste and to the management of waste landfills, entered into a *Professional Services Agreement* with Roca-Buigas. See Docket No. 103, 2, ¶ 9; Docket No. 104, p. 2, ¶ 9.

6.      By means of the *Professional Services Agreement*, LM Waste retained the services of Roca-Buigas as an independent contractor to provide consulting services on waste management, administration, operation, and counseling in related areas to the company. See Docket No. 103, at p. 2, ¶ 10; Docket No. 104, at p. 2, ¶ 10; see also Professional Services Agreement, Docket No. 109-1.

7.      In return for the services Roca-Buigas was to provide, LM Waste agreed to pay Roca-Buigas the sum of $1,100,000.00 over the course of five (5) years. See id.

8.      Pursuant to the *Professional Services Agreement,* (Docket No. 109-1) the payments to Roca-Buigas for his consulting services would be payable as follows:

> "a. three hundred thousand dollars ($300,000.00) in the first year of services under this Agreement, paid in equal installments of twenty-five thousand dollars ($25,000.00), after the Consultant submits the corresponding bill for the current month.
> b. two hundred thousand dollars ($200,000.00) per year of services, during the second, third, fourth and fifth year of this Agreement, paid in equal monthly installments of sixteen thousand six hundred and sixty-six dollars with sixty-seven cents ($16,666.67), after the Consultant submits the corresponding bill for the current month."

---

[5] A *Pre-Attachment Hearing* took place on August 30, 2021. Therein, the parties stipulated 24 exhibits.

Id.

9.     Rivera-Fernández personally guaranteed all obligations of LM Waste to Roca-Buigas. See Docket No. 103, at p. 2, ¶14; Docket No. 104 at p. 2, ¶14; see also Docket No. 109-1 at p. 6; *Transcript of Francisco Rivera-Fernández's Deposition*, Docket No. 186-1 at p. 104, lines 3-9, lines 12-20.

10.    LM Waste and Rivera-Fernández, as guarantor, failed to comply with their obligations under the *Professional Services Agreement*. See Docket No. 161-3 at p. 2, ¶ 17.

11.    As a result thereof, on March 2, 2011, Roca-Buigas filed a collection action against LM Waste and Rivera-Fernández before the Puerto Rico Court of First Instance, San Juan Part, civil case number, K AC2011-0217 (508). See Docket No. 130-1.

12.    On May 5, 2011, Rivera-Fernández and LM Waste executed a Promissory Note[6] in the amount of $250,000.00 payable to the order of Roca-Buigas. See Promissory Note, Docket No. 161-4.

13.    The Promissory Note was executed as guarantee of "the amount owed under [the] professional service contract for the year 2010-2011, specifically, for the months of June 2010 until March 2011." Id. at p. 1.

14.    In addition to expressly naming the "professional services agreement," the Promissory Note states that a default is, among others, "the failure of Obligor to timely make

---

[6] After the Pre-Attachment Hearing, the Court determined that the Promissory Note was not relevant to said matter. However, a prejudgment attachment is a provisional remedy, not a ruling on the merits. In any event, as the objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial," the Court may rely on the Promissory Note in making its summary judgment ruling. DeNovellis v. Shalala,124 F.3d 298, 306 (1st Cir. 1997).

payment of the Obligations under this Note or any other Related Documents on the date any such payment shall first be due and payable." Id., clause 6(i).

15.    In the Promissory Note, Roca-Buigas, Rivera-Fernández and LM Waste agreed that "if a Default [...] occurs and as long as a Default continues, all outstanding monthly obligations shall bear interest at the interest rate plus 10% ("Default Rate")." Id. at p. 2, clause 7.

16.    Rivera-Fernández and LM Waste also agreed that "[e]ach person who signs this Note as a[n] Obligor [...] is jointly and severally obligated." Id. at p. 3, clause 16.

17.    The obliged parties in the Promissory Note are Rivera-Fernández and LM Waste. Id. at p. 3.

18.    On May 10, 2011, Roca-Buigas filed a *Notice of Voluntary Without Prejudice* and the Court entered Judgment accordingly. See Pre-Attachment Hearing, Exhibit 3.

19.    Case K AC2011-0217 (508) was dismissed on May 19, 2011. See Docket No. 103 at p. 3, ¶ 22; Docket No. 104 at p. 3, ¶ 22.

20.    On October 7, 2011, Roca-Buigas filed a second complaint for breach of contract and collection of monies in the Puerto Rico Court of First Instance, San Juan Part against LM Waste, Rivera-Fernández and Barandas-Alonso, former President of LM Waste. The number assigned to this action was K AC2011-1104 (908). See Docket No. 113-5.

21.    A court hearing was scheduled for December 5, 2012.[7] See Docket No. 103 at p. 4, ¶27; See Docket No. 104 at p. 4, ¶27; see also Pre-Attachment Hearing, Exhibit No. 6.

---

[7] During the court conference, the following remarks were presented to the state court:
ATTY. CASTRO [on behalf of Roca-Buigas]: If you allow me, Your Honor . . .
THE JUDGE: Yes.
ATTY. CASTRO: . . . attorney Castro once again. After the rest period, for lunch, well it was made use of for the parties to sit and attempt to reach an agreement. Indeed, they have arrived at an agreement between, right? two persons who we are two serious business persons. The terms of this agreement, because the parties have petitioned it

22.    On said date, as the parties waited outside the courtroom, Roca and Rivera came to a "private settlement agreement" a "meeting of the minds", to settle all claims between the parties. Exhibit 6 of the <u>Pre-Attachment Hearing</u>; Docket No. 186-1, p. 116, l. 4-7 and p. 186, l. 3-7 and 22-24.

23.    The agreements were hand-written on a yellow legal-pad paper and signed by Rivera-Fernández, Roca-Buigas and by Barandas-Alonso's counsel, José Luis Barrios Ramos. <u>See Opinion and Order</u>, Exhibits No. 1 & 1-A; <u>see also</u> Docket No. 167, p. 4, ¶ 21.

24.    Roca-Buigas and Rivera-Fernández agreed that LM Waste owed Roca-Buigas the principal amount of $1,470,000.00. <u>See Opinion and Order</u>, Exhibits No. 1 & 1-A; Docket No. 186-1, p. 127, l. 2-3, and p.186, l. 6-11.

25.    Roca-Buigas and Rivera-Fernández also agreed that Rivera-Fernández will guarantee the full amount owed to Roca-Buigas, namely, $1,470,000.00. <u>See Opinion and Order</u>, Exhibits No. 1 & 1-A; Docket No. 186-1, p. 127, l. 2-3 and p. 186, l. 6-11.

26.    Furthermore, the parties agreed that LM Waste would fulfill the payments in 48 installments of $7,350.00 each, to exclusively cover the interest calculated at a rate of 6% payable

---

yesterday, are going to be confidential. They are going to submit to an agreement which is going to remain, well which is not going to be a part of the judgment. They are going to submit themselves to an agreement which is going to remain, well, which is not going to be a part of the judgment.

[ . . . ]

ATTY. BORGES [on behalf of LM Waste and Rivera-Fernández]: Your Honor, for purposes of the record attorney Borges Méndez. After approaching the bench and talking between the parties, what we have decided is that truly, the parties are going to desist from their causes of action.

For that reason, we are going to sign an agreement which will be confidential, as the colleague stated, which is not going to be a part of the judgment, and we are going to request a period of five days to give us the opportunity to arrive at a draft order for those purposes.

*Transcript of Rerecording of Hearing before the Puerto Rico Court of First Instance, San Juan Part on December 5, 2012,* <u>Pre-Attachment Hearing</u>, Exhibit No. 6, pp. 39-41.

on the 5th day of each month, starting on January 5, 2013. <u>See</u> <u>Opinion and Order</u>, Exhibits No. 1 & 1-A.

27.     In exchange for these promises, the parties waived and released each other from all other claims, including claims by Roca-Buigas against LM Waste's former President, Barandas-Alonso. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> Docket No. 161-3pp. 2-3, ¶ 23[8].

28.     When the case was called, the parties informed the Court that a Private Settlement Agreement had been reached and moved for dismissal of any and all claims between them. <u>See</u> *Transcript of Rerecording of Hearing before the Puerto Rico Court of First Instance, San Juan Part on December 5, 2012*, <u>Pre-Attachment Hearing</u>, Exhibit No. 6, *supra*, fn. 5 at pp. 8-9.

29.     At the hearing, Rivera-Fernández, under oath admitted and reaffirmed that the parties had reached a confidential settlement agreement. <u>See</u> *Transcript of Rerecording of Hearing before the Puerto Rico Court of First Instance, San Juan Part on December 5, 2012*, <u>Pre-Attachment Hearing</u>, Exhibit No. 6, pp. 45-46[9]; <u>see</u> <u>also</u>, Docket No. 186-1, p. 142, l. 1-6.

---

[8] 23. Mr. Barrios-Ramos requested my consent to accept a settlement agreement on my behalf. He indicated that it was a final settlement agreement whereby Mr. Rivera accepted to pay Mr. Roca the full amount owed to him and, in return, Mr. Roca, would dismiss his claims against Mr. Rivera, LM Waste and myself.

[9] THE JUDGE: Your full name.

A: Francisco José Rivera Fernández.

Q: Have you reached an agreement with Don Roberto?

A: That's right.

Q: And it is confidential?

A: Yes.

Q: In other words, that I don't find out, I don't have them here on record, but, you do reaffirm yourself on the agreement that you reached?

A: That's right.

Q: And in the proceeding that is taking place, that the case is going to be closed?

A: Correct.

30.     The Court emphasized several times that there was a private settlement agreement entered into by the parties. See Pre-Attachment Hearing, Exhibit No. 6 at p. 43, l. 9-14, p. 44, l. 25 and p. 45, l. 1-5 and 18-24.

31.     The Court accepted the parties' request and on December 18, 2012, issued Judgment dismissing all claims in the case. See supra, p. 4.

32.     On January 18, 2013, LM Waste paid Roca-Buigas the amount of $7,350.00. See Docket No. 103 at p. 6, ¶ 37 and Docket No. 104, p. 6, ¶ 37; see also Pre-Attachment Hearing, Exhibit No. 5.

33.     The payment was for the amount and in compliance with the yellow legal-pad paper. See Docket No. 186-1, p. 195, l. 2-23.

34.     On February 15, 2013, LM Waste paid Roca-Buigas the amount of $7,000.00. Pre-Attachment Hearing, Exhibit No. 8 at p. 2.

35.     Due to LM Waste and Rivera-Fernández's failure to comply with their obligations under the agreement, on June 5, 2013, Roca-Buigas filed a motion for execution of the judgment issued in civil case number KAC2011-1104 (908). See Pre-Attachment Hearing, Exhibit No. 9.

36.     The court denied the motion for execution of judgment holding that because the Agreement's terms and conditions were not made part of the Judgment, due to its private nature, any efforts to seek its enforcement had to be filed in a separate, independent action. See Docket No. 103 at p. 6, ¶¶ 41-42 and Docket No. 104, p. 6, ¶¶ 41-42.

37.     On June 7, 2013, Rivera-Fernández sent by email a duly executed written settlement agreement which included the terms and conditions and was consistent in all aspects

with the hand-written yellow-pad paper executed on December 5, 2012. <u>See</u> Docket No. 109-5; <u>see</u> <u>also</u> Docket No. 386 at p. 215, l. 15; p. 220, l. 20-25 and p. 221, l. 1-2.

38.     On August 6, 2013, the court held a conference hearing. At the hearing the parties informed that an agreement pursuant to which a series of preexisting agreed payments were renewed had been entered. Counsel for Rivera-Fernández admitted the existence and validity of the agreement (yellow-pad paper) and Roca-Buigas withdrew his request for post-judgment remedies at that time. <u>See</u> <u>Pre-Attachment Hearing</u>, Exhibit No. 11, and Exhibit No. 12, at p. 4, l. 3-25, p. 5, l. 1-2; p. 9, l. 3-17.

39.     Counsel for Rivera-Fernández argued that the court had no jurisdiction to enter an attachment since the parties had a preexisting "extrajudicial settlement agreement". <u>See</u> <u>Pre-Attachment Hearing</u>, Exhibit No. 12, at p. 6, l. 7-9.

40.     On August 6, 2013, LM Waste paid Roca-Buigas the amount of $7,000.00. <u>Pre-Attachment Hearing</u>, Exhibit No. 13; <u>see</u> <u>also</u>, Docket No. 103 at p. 6, ¶ 37 and Docket No. 104, p. 6, ¶ 37.

41.     On August 14, 2013, Roca-Buigas received a payment from LM Waste in the amount of $29,586.71. <u>See</u> Docket No. 103 at p. 6, ¶ 38 and Docket No. 104, p. 6, ¶ 38; <u>see</u> <u>also</u> <u>Pre-Attachment Hearing</u>, Exhibit No. 13.

42.     Subsequently, LM Waste once again failed to make payments owed under the agreement forcing Roca-Buigas to seek post-petition remedies once again against LM Waste, and Rivera-Fernández as guarantor. <u>See</u> <u>Pre-Attachment Hearing</u>, Exhibit No. 15.

43.     On November 25, 2014, Rivera filed its opposition to Roca-Buigas' request for execution of judgment arguing that a private settlement agreement was reached resulting in the

voluntary dismissal on the complaint in case KAC2011-1104 (908); that the parties agreed to the dismissal of case KAC2011-1104 (908) in consideration of the private settlement agreement; that the private settlement agreement included agreed terms and conditions not incorporated into a judgment; that any attempt to question the private settlement agreement shall be made in an independent case and not as part of case KAC2011-1104; and that Plaintiffs had an adequate remedy at law to seek enforcement of the Private Settlement Agreement. See Pre-Attachment Hearing, Exhibit No. 14, pp. 1-2, ¶ 4.

44.     On December 8, 2014, the state court adopted Rivera-Fernández's arguments and proceeded to deny Plaintiffs' motion for execution of judgment. See Pre-Attachment Hearing, Exhibit No. 15.

45.     The payments received by Roca-Buigas add up to $51,286.71. See Docket No. 103 at p. 7, ¶ 45 and Docket No. 104, p. 7, ¶ 45.

46.     On October 29, 2014, LM Waste filed a bankruptcy petition under Chapter 11 before the U.S. Bankruptcy Court for the District of Puerto Rico. The case was identified with number 14-08851, before U.S. Bankruptcy Judge Edward A. Godoy. See Pre-Attachment Hearing, Exhibit No. 16.

47.     At line No. 4 of Form B4, (Official Form 4) (12/07) and signed under penalty of perjury by Mr. Marcos Vélez-Green, acting president of LM Waste, Roca-Buigas was listed as an unsecured creditor with an amount of claim listed of $1,222,750.00. See Pre-Attachment Hearing, Exhibit No. 16; see also LM Waste Rule 30(b)(6) Deposition, Docket No. 161-6 at 9.3 138, l. 2-7.

48.     The Voluntary Petition for Chapter 11 Bankruptcy and the Schedules filed by LM Waste demonstrate that LM Waste owes Roca-Buigas at least the amount of $1,222,750.00 and the debt was not disputed, contingent, unliquidated or subject to any setoff. See Pre-Attachment Hearing, Exhibit No. 16 at p. 8.

49.     On August 30, 2021, the Court held a *Pre-Attachment Hearing*. Plaintiffs presented the testimony of Roca-Buigas. Defendants were afforded the opportunity to be heard and cross-examine Roca-Buigas. See Docket No. 146.

50.     During the hearing, Roca-Buigas testified as to the validity of the debt and the amount that LM Waste and Rivera-Fernández owed him, as claimed in the *Complaint*. Defendants did not cross-examine Roca-Buigas as to its validity. See id.

51.     Since January 5, 2017, LM Waste owes Plaintiffs the total sum of $1,771,513.29, plus applicable interests. This is the result of subtracting $51,286.71, paid by LM Waste to Roca-Buigas between the months of January and August of 2013, to the debt agreed in the agreement of $1,822,800.00. See Pre-Attachment Hearing, Exhibit No. 5; see also, Docket No. 103 at p. 7, ¶ 45 and Docket No. 104, p. 7, ¶ 45; Docket No. 386, p. 211, l. 10-13.

52.     Thus, Rivera-Fernández is personally guarantor for the amount LM Waste owes to Plaintiffs, namely, $1,771,513.29, plus applicable interests. See Docket No. 386, p. 126, l. 24 to p. 127, l. 3.

### III.     LEGAL STANDARD

#### A.  Motion for Summary Judgment Standard (Fed. R. Civ. P. 56)

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Veda-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. U. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (*citing* Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (*citing* Liberty Lobby, Inc., *supra*, at 247–248); Prescott, *supra*, at 40 (1st Cir. 2008) (*citing* Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* the advisory committee note to the 1963 Amendment to Fed. R. Civ. P.

56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. See DeNovellis v. Shalala, *supra*, at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (*citing* Celotex Corp. v. Catrett, *supra*, at 323). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" which affects the granting of a summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); *see*, *also*, Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial- worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., *supra*, at 477. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture*."* Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. *See* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Anderson v. Liberty Lobby, Inc., *supra*, at 255; *see*, *also*, Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves, *supra*, at 150 (*quoting* Anderson v. Liberty Lobby, Inc., *supra*, at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56 (a). Hence, in order to prevail, Plaintiffs must demonstrate that, even admitting well-pleaded allegations in light most favorable to the Defendants, the applicable law compels a judgment in its favor.

## IV.   LEGAL ANALYSIS

### A.   *Breach of Contract Claims under Puerto Rico Law*

Because this is a diversity jurisdiction case, Puerto Rico law applies. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010). Additionally, as the new Civil Code of Puerto Rico became effective on November 28, 2020, and the controversies subject of the instant case occurred prior thereto, the Puerto Rico Civil Code of 1930, as amended, applies.

Under Puerto Rico Civil law an existing contract requires: "(1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause or obligation which may be established." P.R. Laws Ann. Tit. 31, § 3391. By virtue of the Puerto Rico Civil Code, a "compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." P.R. Laws Ann. Tit. 31, § 4821. "Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R. Laws Ann. Tit. 31, § 3401. In Puerto Rico, 'an agreement can be binding without executed documentation if, *inter alia*, the parties have a 'meeting of the minds expressed through the offer and the acceptance.'" TC Invs., Corp. v. Becker, 733 F. Supp. 2d 266, 279 (D.P.R. 2010) (*citing* Ysiem Corp. v. Commercial Net Lease Realty, Inc., 328 F.3d 20, 23 (1st Cir.2003); see also Producciones Tommy Muñiz, Inc. v. Comite Organizador de los VIII Juegos Panamericanos, 13 P.R. Offic. Trans. 664, 113 D.P.R. 517 (1982).

Pursuant to the Puerto Rico Civil Code, "[a] contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give

something or to render some service." P.R. Laws Ann. Tit. 31, § 1206. Furthermore, "[t]he contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order." P.R. Laws Ann. Tit. 31, § 3372. Therefore, "a contract is deemed perfected as soon as the parties give their consent; from that time on the parties are bound to fulfill their obligations under the contract. The manner in which the parties impart their consent, whether it be in writing or verbally, is generally of no consequence. Under Puerto Rico law, <u>verbal contracts are valid and enforceable</u>." <u>Lopez Morales v. Hosp. Hermanos Melendez Inc.</u>, 447 F. Supp. 2d 137, 142 (D.P.R. 2006); <u>see</u> P.R. Laws Ann. Tit. 31, § 3375 (internal citations omitted) (emphasis ours).

"Settlements are subject to the general rules regarding contracts and their interpretation, insofar as compatible with the specific provisions of the Civil Code that regulate compromises." <u>Lopez Morales</u>, 447 F. Supp. 2d at 141. Therefore, "obligations arising from contracts have legal force between the contracting parties and must be filled in accordance with their stipulations." P.R. Laws Ann. Tit. 31, § 2994. Simply expressed, the Puerto Rico Civil Code has established that if "the terms of a contract are clear and leave no doubt as to the intentions to the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. Tit. 31, § 3471.

Specifically, the First Circuit has found that "an agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." <u>Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo</u>, 96 F.3d 10, 14 (1st Cir. 1996) (<i>quoting</i> <u>Executive Leasing Corp. v. Banco Popular de Puerto Rico</u>, 48 F.3d 66, 69 (1st Cir. 1995). It has further been emphasized that, extrinsic evidence is "inadmissible in the face of a clear and unambiguous contract." <u>Id.</u> at 17; <u>see</u> P.R. Laws Ann. tit. 31, § 3471; <u>see Entact</u>

Servs., LLC v. Rimco, Inc., 526 F.Supp.2d 213, 221 (D.P.R.2007). A contract is unambiguous when it can "be understood in one sense alone, without leaving any room for doubt, controversies or difference[s] of interpretation ..." Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir.1995) (quoting Catullo v. Metzner, 834 F.2d 1075, 1079 (1st Cir.1987)). When construing a contract in Puerto Rico, the stipulations "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." P.R. Laws. Ann. tit. 31, § 3475; Entact Servs., LLC, 526 F.Supp.2d at 221–22 (D.P.R.2007) (interpreting a car rental contract statement on payment based on the other clauses in the contract).

A term in a contract is clear so long as "is sufficiently lucid to be understood to have one particular meaning, without room for doubt." (Emphasis ours). Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D.P.R. 1993) aff'd 36 F. 3d 1089, 1994 WL 510135 (1st Cir. 1994). "Once a court determines that the terms of a contract are sufficiently clear so that only one meaning is possible, the court cannot dwell on the 'alleged' intent of the parties at the time they entered into the contract." Id.

Also, "[i]n order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." P.R. Laws Ann. Tit. 31, § 3472. In sum, "the parties' meeting of the minds 'cannot be depersonalized: it is a communicative link and bond between two persons.' For determining said intent, one must consider the occasion, the circumstances, the persons involved, and the agreement they intended to negotiate. Ramírez, Segal & Latimer v. Rojo Rigual, 123 P.R. Dec. 161 (1989), 23 P.R. Offic. Trans. 156. However, "said article, [] does not exclude prior acts or other circumstances

that may contribute to the proper investigation of the will of the executing parties." <u>Cooperativa</u>

<u>La Sagrada Familia v. Castillo</u>, 107 P.R. Dec. 405 (1978), 7 P.R. Offic. Trans. 449, 461. Essentially,

the Puerto Rico Supreme Court explained that,

> [the] construction of contracts and other juristic acts, even if arising from the expressions contained in the words said or written, cannot stop at the rigorous or grammatical sense of the same, and that the intention of the parties and the spirit and purpose that has governed the transaction must be fundamentally investigated, inferring from the concurring circumstances and from the total conduct of the interested parties, as sanctioned by said article, which does not exclude prior acts or other circumstances that may contribute to the proper investigation of the will of the executing parties.

<u>Id.</u> Similarly, this District has embraced this interpretation while further adding that,

> [p]ursuant to Art. 1233, when the contract terms are not clear and 'the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail.' P.R. Laws Ann. tit. 31 § 3471 (1991).
>
> The Civil Code sets the guidelines for ascertaining the 'intention of the contracting parties'. In this respect, it provides that '[i]n order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract'. P.R. Laws Ann. tit. 31 § 3472 (1991).
> Based on the aforementioned Civil Code provisions, the construction of a contract terms should start with the written expressions. However, it is not circumscribed to a literal and grammatical analysis, extending to fundamentally inquire the true intention of the parties and the spirit or purpose permeating over the entire business which may be inferred from the concurrent circumstances and the total behavior of the interested parties.

<u>Century Packing Corp. v. Giffin Specialty Equip. Co., LLC</u>, 438 F. Supp. 2d 16, 27 (D.P.R. 2006)

(*citing* <u>Cooperativa La Sagrada Familia</u>, 7 P.R. Offic. Trans at 461). Likewise, [t]he terms of a

contract should be read as a whole, and conflicts must be read to harmonize and serve the intent

of the parties." <u>Autogermana, Inc. v. BMW of N. Am., Inc.</u>, 38 F. Supp. 3d 230, 238 (D.P.R. 2014).

But "[t]he validity and fulfillment of contracts cannot be left to the will of one of the contracting

parties." PR Laws Ann Tit 31 § 3373.

However, the Puerto Rico Supreme Court has cautioned that "[w]hen a breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies." Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d 1, 12 (D.P.R. 2012)(*citing* Soc. de Gananciales v. Velez & Asoc., 145 P.R. Dec. 508, 1998 P.R. -Eng. 313, 060 (1998). "When a party breaches a contract, it 'is liable to the aggrieved party for damages which were foreseen or may have been foreseen." Id. (*citing* Oriental Fin. Group, Inc. v. Fed. Ins. Co., 483 F. Supp. 2d, 161, 165 (D.P.R. 2007). In fact, the Puerto Rico Civil Code provides that "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby. P.R. Laws Ann. Tit. 31, § 3018. "To that effect, 'an action for damages for breach of contract ... only lies when the damage suffered exclusively arises as a consequence of the breach of an obligation specifically agreed upon, which damage would not occur without the existence of a contract.'" Colon v. Blades, 717 F. Supp. 2d 175, 185 (D.P.R. 2010) (*citing* Ramos Lozada v. Orientalist Rattan Furniture Inc., 130 P.R. Dec. 712, 727 (1992)).

Lastly, "[s]hould the obligation consist of the payment of a sum of money, and the debtor should be in default, the indemnity for damages, if not otherwise stipulated, shall consist of the payment of the interest agreed upon, and should there be no agreement, the payment of the legal interest." P.R. Laws Ann. Tit. 31, § 3025.

Here, the basis of the instant *Complaint* is a handwritten document dated December 5, 2012, wherein, the parties included the following agreements:

> We, Roberto Roca [Buigas] and Francisco [J.] Rivera Fernández, hereby freely and voluntarily accept and agree today on the following with regards to case no. K AC2011-1104:
>
> 1) The parties agree that the debt [will] be paid by L[e]M Waste Services, and Francisco [J.] Rivera Fernández will guarantee that the payment of the same will be $1,470.000.00
>
> 2) The same will be paid in 48 installments at an interest rate of 6% with a monthly payment of $7,350.00, beginning on January 5, 2013. The payment will be made within the first five days of each month.
>
> 3) Payments to the principal will be made without penalties.
>
> 4) All parties hereby waive all claims, whether related or not, against each other and relieve Isidro Barandas, in his personal capacity, of the claimed debts.

Opinion and Order, Exhibits No. 1 & 1-A [10]. On that date, as the parties waited outside the courtroom, Roca-Buigas and Rivera-Fernández came to a "private settlement agreement" a "meeting of the minds", to settle all claims between the parties. Factual Finding (hereinafter, "Fact Find.") ¶ 22. The document was hand-written on a yellow legal-pad paper and signed by Rivera-Fernández, Roca-Buigas and by Barandas-Alonso's counsel, José Luis Barrios Ramos. Fact Find. ¶ 23. According to said document, Roca-Buigas and Rivera-Fernández agreed that LM Waste owed Roca-Buigas the principal amount of $1,470,000.00. Fact Find. ¶ 24. Likewise, the parties agreed that Rivera-Fernández would guarantee the full amount owed to Roca-Buigas, namely, $1,470,000.00. Fact Find. ¶ 25. Additionally, Roca-Buigas and Rivera-Fernández agreed that LM Waste would fulfill the payments in 48 installments of $7,350.00 each, to exclusively cover the interest calculated at a rate of 6% payable on the 5th day of each month, starting on January 5, 2013. Fact Find. ¶ 26. In exchange thereof, the parties agreed to waive and release each other

---

[10] Exhibit No. 1-A of this *Opinion* is the English translation of the yellow-pad paper.

from <u>all other claims</u>, including those against LM Waste's former President, Barandas-Alonso. <u>Fact Find.</u> ¶ 27.

Considering the facts herein, the Court finds no genuine dispute as to the validity and clarity of the yellow-pad paper as the operative document which incorporates the agreements reached by the parties. The Court explains.

As previously discussed, for a valid contract to exist, the following requirements must be met pursuant to Puerto Rico law, namely: "(1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; and (3) the cause or obligation which may be established." P.R. Laws Ann. Tit. 31, § 3391. Generally, "an agreement is clear when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." <u>Borschow Hospital and Medical Supplies, Inc.</u>, 96 F.3d at 14. There is no controversy as to the fact that upon a "meeting of the minds" between Roca-Buigas and Rivera-Fernández, the parties came to a private settlement agreement to settle all claims. Likewise, both Roca-Buigas and Rivera-Fernández confirmed under oath that such an agreement had been reached on December 5, 2012. <u>Fact. Find.</u> ¶¶ 28-30.

There is also no genuine dispute as to the fact that the "yellow-pad paper" contains all the elements required for a valid contract to be configured. Namely, the parties agreed to settle all claims related to the professional services agreement by Defendants agreeing there was an outstanding debt of $1,470,000.00 which would be fulfilled in 48 installments at an interest rate of 6% beginning on January 5, 2013, on a monthly basis. <u>Fact Find.</u>, ¶¶ 24, 26, 28. Codefendant, Rivera-Fernández also agreed to guarantee the outstanding debt while releasing former LM Waste President, Barandas-Alonso from any of the claims thereafter. The handwritten document

was signed by all parties involved. Fact Find., ¶ 23. After all, the manner in which the parties impart their consent, whether it be in writing or verbally, is generally of no consequence. Lopez Morales, 447 F. Supp. 2d at 142; see P.R. Laws Ann. Tit. 31, § 3375.

While the Defendants allege that the "yellow-pad paper" is nothing more than a "preliminary agreement in a handwritten piece of paper," their acts, "contemporaneous and subsequent to the contract" say otherwise. See P.R. Laws Ann. Tit. 31, § 3472. For instance, Roca-Buigas and Rivera-Fernández declared under oath before a state court judge that they had reached an agreement. There was no mention of the preliminary nature of the agreement. In fact, the Court emphasized several times that there was a private settlement agreement entered into by the parties. Fact Find., ¶ 30. At no point did the Defendants clarify said instance while only requesting "a period of five days to give us the opportunity to arrive at a draft order for [judgment] purposes." See Transcript of Rerecording of Hearing before the Puerto Rico Court of First Instance, San Juan Part on December 5, 2012, Pre-Attachment Hearing, Exhibit No. 6, p. 41. There are other considerations subsequent to the contract which confirm the validity of the agreement, such as, that by January 18, 2013, LM Waste paid Roca-Buigas the amount of $7,350.00, in compliance with the amount established in the yellow-pad paper. Fact Find., ¶¶ 32-33. Thereafter, on February 15, 2013, LM Waste made another payment, this time of $7,000.00. Fact Find., ¶ 34. Then, on August 14, 2013, Roca-Buigas received a payment from LM Waste in the amount of $29,586.71, which sums to the amount of approximately four (4) additional payments. Fact Find. ¶ 40. In spite of the fact that no other payments were made, the ones that were made were consistent with the agreements set forth in the yellow-pad paper.

Additionally, LM Waste filed a voluntary bankruptcy petition under Chapter 11 before the U.S. Bankruptcy Court for the District of Puerto Rico back on October 29, 2014. <u>See</u> Bankr. Case No. 14-bk-08851 (EAG). <u>See</u> <u>Fact Find.</u> ¶ 45. Official Form 4, signed under penalty of perjury by Marcos Vélez-Green, acting president of LM Waste, listed Roca-Buigas as an unsecured creditor for an amount of claim of $1,222,750.00.  <u>Fact Find.</u> ¶ 46; <u>see also</u> Docket No. 144-2 at pp. 8 and 11. In fact, by means of the *Professional Services Agreement*, LM Waste agreed to pay Roca-Buigas the sum of $1,100,000.00 over the course of five (5) years. <u>Fact Find.</u> ¶¶ 6-7. Such statement is further evidence that LM Waste recognized a debt of at least $1,222,750.00 in favor of Roca-Buigas and that said amount was not disputed, contingent, unliquidated, or subject to any setoff. <u>Fact Find.</u> ¶ 47.

Lastly, a consideration that caught the Court's attention is that while the Defendants insist that the yellow-pad paper is a preliminary agreement, the drafts that were allegedly circulated between the parties contain fundamentally the same stipulations. <u>See</u> Docket No. 169-3. For instance, one of the Defendants' exhibits is a document titled *Confidential Transaction Agreement and General Relief* (Docket No. 169-5). Said document includes essentially all the agreements that were accepted in the December 5, 2012 "yellow-pad paper" while only including several clauses to further clarify the covenants. The document is signed by Roca-Buigas and Rivera-Fernández, as guarantor for LM Waste. The Court found no conflict between the yellow-pad paper and the *Confidential Transaction Agreement and General Relief.* Therefore, it is safe to conclude that on June 7, 2013, Rivera-Fernández was still in agreement as to the covenants that were established when agreeing to the private settlement agreement on December 5, 2012. It is, thus, unreasonable for Rivera-Fernández to allege that the yellow-pad paper was

"a preliminary agreement to be used as a guide by the parties to draft and prepare the final 'Confidential Settlement Agreement and General Release' that all the parties involved in the Complaint were still negotiating and would eventually sign in order to settle once and for good all the claims between them arousing from the 'Professional Services Agreement'" and that "[t]he agreement does not have the information as to the length of the services provided, and the amount of the services provided," as six (6) months later he was accepting the same terms that were agreed upon on December 5, 2012. Docket No. 166 at 4 and Docket No. 186 at 9. 116, l. 4-25.

Ultimately, "[i]n Puerto Rico an agreement can be binding without executed documentation if, *inter alia*, the parties have a 'meeting of the minds expressed through the offer and the acceptance.'" <u>TC Invs., Corp.</u>, 733 F. Supp. 2d at 279. It is undisputed that the parties came to a "meeting of the minds", to settle all claims. <u>Fact Find.</u>, ¶ 22 The agreements were incorporated to a yellow piece of paper, which in turn, became the operative agreement. <u>Fact Find.</u>, ¶ 23. In the end, "a contract is deemed perfected as soon as the parties give their consent," and Rivera-Fernández affirmatively gave consent when signing the yellow-pad paper and declaring under oath before a state judge that all claims had been settled. <u>Fact Find.</u>, ¶ 29.

Having concluded that there is no genuine dispute as to the validity of yellow-pad paper, and thus, it is the operative *Private Settlement Agreement* for all intents and purposes, the Court must now determine whether Rivera-Fernández in his personal capacity obligated himself as a joint and severally debtor or as a guarantor. The Court finds that Rivera-Fernández is the guarantor of the debt and explains.

**B.      Is Rivera-Fernández joint or severally liable or a guarantor?**

Article 1729 of the Puerto Rico Civil Code provides that "[b]y security a person binds himself to pay or perform for a third person [or corporation] in case the latter should fail to do so." P.R. Laws. Ann. Tit. 31 § 4871. There are several types of security, to wit, "conventional, legal, or judicial, gratuitous, or for a valuable consideration." Id., § 4872. Specifically, Article 1733 provides that, "[a] creditor may cite the surety should he institute the claim against the principal debtor, but the benefit of a levy against the principal shall always be reserved, even when a judgment is rendered against both of them." Id., § 4895. However, "[i]n order that the surety may avail himself of the benefit of a levy against the principal, he must require it of the creditor as soon as the latter may sue for payment, and determine the property of the debtor which can be sold within the Commonwealth of Puerto Rico and which may be sufficient to cover the amount of the debt." Id., § 4893. If the aforementioned conditions are met by the guarantor, "the creditor who is negligent in making a levy upon the property of the principal designated, shall be liable to the extent of the value of said property for the insolvency of the debtor arising from said negligence." Id., § 4894. Finally, Article 1726 provides that,

> [s]ecurity is not presumed; it must be express and cannot be extended further than that specified therein. If it be simple and indefinite it shall include not only the principal obligation but all its accessories, including the costs of the suit, it being understood, with regard to the latter, that the surety shall only be liable for those incurred after he has been asked to pay.

Id., § 4876 (emphasis ours).

Plaintiffs claim that Rivera-Fernández is not a guarantor but a joint and severally debtor of the alleged outstanding debt. However, the Defendants correctly rely on the "express and clear language of the . . . handwritten piece of paper" in support of their contention that Rivera-

Fernández is the guarantor of the debt. Docket No. 166 at 10. As correctly argued by the Defendants, "[i]if the terms of a contract are clear and leave no doubt about the intention of the contracting parties the literal meaning of its clauses will be followed." P.R. Laws Ann. Tit. 31 § 3471. This is applicable to the validity of the yellow-pad paper as well as the entirety of the clause that reads as follows: "[t]he parties agree that the debt [will] be paid by L[e]M Waste Services, and Francisco [J.] Rivera Fernández will guarantee the payment of the same will be $1,470,000.00." Opinion and Order, Exhibits No. 1 & 1-A. The Court recognizes that Rivera-Fernández was designated as guarantor, and as such, he is subsidiarily responsible for LM Waste's debt, until the instant judgment establishes the existence of a debt. But the Defendants cannot expect to rely on the clause that establishes Rivera-Fernández's role as guarantor while denying the validity of the agreement as a whole.

Meanwhile, the Court is not persuaded by Plaintiffs' argument that by signing the *Promissory Note*, "Rivera became jointly and severally liable to Roca for all outstanding obligations," and explains. MSJ at 14. On May 5, 2011, Rivera-Fernández and LM Waste executed a Promissory Note in the amount of $250,000.00 payable to the order of Roca-Buigas. Fact Find. ¶ 12. The Promissory Note was executed as guarantee of "the amount owed under [the] professional service contract for the year 2010-2011, specifically, for the months of June 2010 until March 2011." Fact Find. ¶ 13. In addition to expressly naming the "professional services agreement" it states that a default is, among others, "the failure of Obligor to timely make payment of the Obligations under this Note or any other Related Documents on the date any such payment shall first be due and payable." Id. at p. 2, clause 6(i). Fact Find. ¶ 14. Additionally, Roca-Buigas, Rivera-Fernández and LM Waste agreed that "if a Default [...] occurs and as long as

a Default continues, all outstanding monthly obligations shall bear interest at the interest rate plus 10% ("Default Rate")." <u>Fact Find.</u> ¶ 15. Finally, Rivera-Fernández and LM Waste agreed that "[e]ach person who signs this Note as a[n] Obligor [...] is jointly and severally obligated." <u>Fact Find.</u> ¶ 16.

The Promissory Note, as drafted, pertains to "the amount owed under professional service contract for the year 2010-2011, specifically, for the months of June 2010 until March 2011." <u>Fact Find.</u> ¶ 13. It does not specify that is applicable to the totality of the *Professional Services Agreement* compromise but rather as to $250,000.00 owed for a period of eight (8) months. Therefore, it would only be valid for the established amount of $250,000.00 but not for the entirety of the debt under the professional services contract. The fact that Rivera-Fernández agreed to be jointly and severally liable for the debt from June 2010 until March 2011 does not extend to the *Private Settlement Agreement* object of the *Complaint*.

In any event, by December 5, 2012, the parties entered an agreement, which disposed of all the claims and debts between the parties. Simply put, by agreeing on a private settlement agreement which "waive[d] all claims, whether related or not, against each other and relieve[d] Isidro Barandas, in his personal capacity, of the claimed debts" the parties effectively disposed of all controversies related to all other aspects of the professional services agreement. Notwithstanding, as <u>[s]ecurity is not presumed; it must be express and cannot be extended further than that specified therein</u>, the parties expressly agreed that Rivera-Fernández would be the guarantor of the debt of $1,470,000.00. P.R. Laws Ann. Tit. 31, § 4876. Therefore, the Court concludes that on the December 5, 2012, private settlement agreement, Rivera-Fernández is not joint and severally liable but a guarantor of LM Waste's debt.

## V.     CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** the Plaintiffs' *Motion for Summary Judgment and Incorporated Memorandum of Law* (Docket No. 160). Accordingly, since January 5, 2017, LM Waste owes Plaintiffs the total sum of **$1,771,513.29**, plus applicable interests, while Rivera-Fernández is obliged to guarantee the payment thereof. Plaintiffs are to submit the calculation as to the applicable interests up to the date of the instant *Opinion and Order*. Judgment is favor of Plaintiffs is to be entered, accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March, 2022.


*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge